UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD L. ROWE,

    Plaintiff,                                      Civil Action No. 06-12411

v.                                               HON. GEORGE CARAM STEEH
                                                   U.S. District Judge
                                                   HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronald L. Rowe brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. On August 15, 2006, Plaintiff filed a Motion to Remand [Docket #9 ] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's motion be DENIED and the case DISMISSED.

## PROCEDURAL HISTORY

On April 1, 2003, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset of disability date of July 31, 2001 (Tr. 57). After the initial denial of his claim, Plaintiff filed a request for an administrative hearing, held on October 20, 2005 by video conference (Tr. 23). Administrative Law Judge (ALJ) James E. Ross presided (Tr.

23,169). Plaintiff, represented by counsel, testified (Tr. 169-182). On December 8, 2005, the ALJ found that Plaintiff was able to perform his past relevant work as a slitter operator (Tr. 27).[1] On April 4, 2006, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review on May 30, 2006.

## **BACKGROUND FACTS**

Plaintiff, born November 13, 1956, was age 49 when the ALJ issued his decision (Tr. 57). He received a GED and worked formerly as a slitter operator (Tr. 70, 75). Plaintiff alleges disability due to rheumatoid arthritis (Tr. 69).

### A. Plaintiff's Testimony

Plaintiff, one month short of 49 at the time of hearing, testified that he lived in a trailer home in Taylor, Michigan (Tr. 170). He reported leaving school in 11th grade and later received a GED (Tr. 171). Plaintiff stated that before becoming disabled in July 2001, he worked as a slitter operator for 25 years, testifying that his job required him to lift 20 to 50 pounds on a regular basis (Tr. 171). He attributed disability to joint inflamation, the lack of mobility, and constant fatigue (Tr. 171, 181).

Plaintiff estimated that he experienced "flare ups" from rheumatoid arthritis between one and five times a week, adding that barometric pressure changes caused his symptoms to

---

[1]According to the Dictionary of Occupational Titles (DOT), a slitter operator "operates [a] sheeting machine to slice cakes of baked plastics into sheets of uniform thickness." DOT, §690.382-010.

worsen (Tr. 172). Reporting knee, ankle, back, shoulder, finger, toe, and hand pain, Plaintiff opined that knee pain and stiffness created the most limitations (Tr. 172). On a scale of one to 10, he assessed his usual level of discomfort at "5," and 8 to ten when experiencing a "flare up" (Tr. 173, 175). Plaintiff testified that he obtained limited relief by lying down and/or taking pain medication (Tr. 174). He indicated that bouts of ankle pain were characterized by redness and inflamation which he alleviated in part by keeping his feet elevated (Tr. 174). In addition, Plaintiff reported intense shoulder pain as well as intense fatigue (Tr. 175-176).

Plaintiff reported that he spent most of his "bad" days in bed or reclined in an easy chair (Tr. 176). He denied driving more than two miles at a time and reported that his friends and family assisted him with housework and shopping (Tr. 176-177). He estimated that he could walk up to a block and a half before symptoms of arthritis obliged him to stop (Tr. 177). He stated that he could sit for up to an hour without discomfort, but could lift a maximum of only five pounds (Tr. 177-178). He indicated that he continued to bathe, dress, and prepare simple meals independently (Tr. 176-177). Plaintiff admitted that despite not working as a slitter operator since 2001, he received compensation for caring for his mentally impaired adult brother, adding that other family members also made significant contributions to his brother's care (Tr. 179). Plaintiff reported that he used a cane regularly and a wheelchair occasionally (Tr. 180).

    **B.    Medical Evidence**

    **i. Treating Sources**

In September, 1996, Rheumatologist Ali Dagher, M.D., examined Plaintiff, finding that his "symptomatology . . . is suggestive of a spondyloarthropathy type presentation" (Tr. 113). Dagher prescribed Azulfidine. Notes from Dagher's more recent examination, dated March, 2004 state that Plaintiff demonstrated decreased flexion of the lumbar spine, but "knees and shoulders were okay" (Tr. 160). Dagher noted further that imaging studies of the lumbar spine showed mild degenerative changes L5 and S1[2] (Tr. 160).

February 1997 records submitted by the Southland Eye Clinic indicate that Plaintiff experienced iritis (Tr. 120). Notes made the following month, referencing laser surgery, indicate that the condition was improving "somewhat" (Tr. 119). In May, 2003, treating source Ram S. Goswani, M.D., found the absence of work-related sitting limitations, but opined that Plaintiff was unable to stand or walk for more than one hour (Tr. 125-126). Goswani also found that Plaintiff could lift up to 50 pounds occasionally (Tr. 125). The assessment also noted the presence of knee and lower back pain along with inflammation (Tr. 124). Goswani prescribed work restrictions in March 1998 and May and August of 1999, limiting Plaintiff to no more than eight hour workdays due to symptoms of arthritis (Tr. 129-130). Imaging studies of the lumbar spine performed in October 2003 showed "[m]inimal degenerative changes" (Tr. 165). Examination notes made in May 2005 indicate that Plaintiff was "not feeling any improvement," attributing his discomfort to weather changes (Tr. 161).

---

[2]Transcript copies of Dagher's March, 2004 examination are only partially decipherable (Tr. 160).

### ii. Consultive and Non-examining Sources

In June 2003, Syed Iqbal, M.D., performed an examination of Plaintiff on behalf of the SSA (Tr. 131-150). Plaintiff reported radiating back pain, along with joint pain which he stated was exacerbated by weather changes (Tr. 133). Iqbal noted that upon arriving for his appointed examination time, Plaintiff walked independently until he realized that he was being watched by office personnel, at which point he sat down in a wheelchair provided by his companion (Tr. 134). Iqbal observed that Plaintiff was "mentally alert, and emotionally stable," noting further that Plaintiff demonstrated normal posture, a normal gait, and the absence of muscle atrophy (Tr. 136). Range of motion studies performed by Iqbal showed normal results (Tr. 139-140). Iqbal commented that after leaving the physician's office, Plaintiff sat down in the wheelchair, allowing his companion to push him back to his car, where Plaintiff "jumped out of the wheelchair, and sat in his truck as a normal person" (Tr. 137).

A Residual Functional Capacity Assessment performed in July 2003 found that Plaintiff retained the ability to lift 50 pounds occasionally and 25 pounds frequently, along with the ability to stand, walk, or sit for six hours in an eight-hour workday and an unlimited ability to push and pull (Tr. 153). The report found further that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 154). The assessment noted the absence of manipulative, visual, communicative, or environmental limitations, concluding that Plaintiff's allegations of total disability were "not credible" (Tr. 154-156).

### iii. Medical Evidence Submitted Subsequent to the Administrative Hearing

In July 2006, the Court received a work release by Dr. Gaswani in which he states that as of July 6, 2006, Plaintiff was "totally and permanently disabled" [Docket #17].

**C.     Vocational Expert Testimony**

The administrative hearing did not include vocational testimony.

**D.     The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Ross determined that Plaintiff experienced the severe impairment of rheumatoid arthritis, finding that the condition did not meet or medically equal the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 23-24, 26-27). The ALJ found further that while the record established the presence of "occasional loss of visual acuity because of iritis," the condition was "transient" (Tr. 24). In concluding that Plaintiff could perform his past relevant work as a slitter operator, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift 50 pounds occasionally and 25 pounds frequently as well as an ability to sit, stand, or walk for six hours in an eight-hour day (Tr. 26, 27).

The ALJ rejected Plaintiff's allegations of complete disability, citing a 2003 medical report by Dr. Goswani which found that Plaintiff could lift up to 50 pounds, along with Dr. Iqbal's observation noting the absence of residual limitations resulting from rheumatoid arthritis (Tr. 26). The ALJ also pointed out that Plaintiff's "inconsistent use [of] a wheelchair, immediately before and after the consultative examination . . . suggests purposeful exaggeration" (Tr. 26).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Listing 14.09

Plaintiff *pro se* argues that his degree of limitation as a result of rheumatoid arthritis, improperly overlooked by the ALJ, mandates remand. *Docket #9*, 16. On a related note, he contends that the administrative decision is tainted by its reliance on the opinion of a consultive rather than treating physician. *Docket #16.*

For a finding of disability resulting from rheumatoid arthritis at Step Three of the administrative analysis, Listing 14.09 requires that a claimant must first demonstrate the presence of *inflammatory arthritis*. 20 C.F.R. Pt. 404, Subpart. P, App. 1, §14.00B6 (emphasis added). Next, a physical examination must show "joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c

. . ." 20 C.F.R. Pt. 404, Subpart. P, App. 1, §14.09.

Substantial evidence supports the ALJ's Step Three determination, along with his ultimate Step Five finding of non-disability. In reference to to Listing 14.09's requirements, the ALJ cited Dr. Iqbal's June 2003 remark that Plaintiff walked without difficulty before and after his consultive examination and limited his wheelchair use to the period in which he believed he was being observed by medical staff (Tr. 137). In addition, the ALJ noted that the consultive examiner found the absence of inflammation, manipulative limitations, or atrophy (Tr. 24-25). The ALJ's finding that Plaintiff could perform his past relevant work at the medium exertional level is further supported by the July 2003 Residual Functional Capacity Assessment's conclusion that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently (Tr. 24 referencing 153).

Likewise, I disagree with the closely related argument that the ALJ erred in failing to adopt Dr. Goswani's findings in their entirety.[3]  First, as discussed at length in the administrative opinion, Goswani's 2003 opinion that Plaintiff was limited to one hour of standing and walking due to symptoms of arthritis stands at odds with the consultive physician's observation that Plaintiff demonstrated a normal range of motion and the absence

---

[3] "[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991);20 C.F.R. §404.1527(d)(2) (2004). Further, "[c]laimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner of Social Sec.* --- F.3d —, 2007 WL 1040037 (6th Cir. April 9, 2007).

of muscle atrophy (Tr. 136). In addition, the administrative decision noted that contrary to the degree of limitation found by Goswani, 2003 imaging studies showed only "minimal changes" (Tr. 25). The ALJ pointed out further that Plaintiff's allegations of complete disability were contradicted by his admission that he continued to receive compensation from the State for caring for his disabled brother (Tr. 26).

More obviously, while Goswani found a greater degree of limitation than consultive and non-treating medical sources, his findings from the relevant period, standing alone, do not support Plaintiff's contention that he is disabled. Although the ALJ deviated in part from Goswani's opinion, he agreed with the treating physician's finding that Plaintiff could lift fifty pounds occasionally, reasonably finding that Plaintiff experienced transient, rather than continuous limitations as a result of arthritis (Tr. 24, 25). The ALJ noted that in June 2001, Goswani cleared Plaintiff for a return to work (Tr. 24). The ALJ's well-supported discussion of Gaswani's opinion does not provide a basis for remand.

**B. Sentence Six**

Plaintiff contends that the administrative decision failed to consider limitations created by depression[4] (Tr. 10). He also disputes the observation that he "jumped" out of his wheelchair after the completion of his consultive examination (Tr. 7 *referencing* Tr. 137).

Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review

---

[4]The Court will construe Plaintiff's motion for remand to incorporate arguments made in his January 31, 2006 submission to the Appeals Council (Tr. 6-19).

by the district court. In *Cotton*, the court held that where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Even if the Court were to assume that evidence of Plaintiff's depression was both new and material, Plaintiff has failed to establish good cause for its omission from the administrative record. First, Plaintiff's April 1, 2003 application for benefits lists only rheumatoid arthritis and iritis as the conditions limiting his ability to work (Tr. 69, 76-77). Further, at the administrative hearing, the ALJ's final question to Plaintiff reads as follows: "Anything I haven't asked you about or your attorney hasn't asked you about that you want to mention?" Plaintiff: "I don't think so, sir" (Tr. 182). Although Plaintiff's submission to the Appeals Council implies that the ALJ was neglectful in omitting mention of depression, Plaintiff's own failure to either list depression in his application or broach the subject at the hearing accounts for its absence from the administrative record. In addition, although Plaintiff also objects to Dr. Iqbal's statement that Plaintiff "jumped" into his truck, this

observation by the consultive physician, even if discounted, is accompanied by examination notes by Iqbal which further suggest that Plaintiff's allegations of limitations were exaggerated (Tr. 134-137).

### C. Medical Records Post-dating the Administrative Decision

Finally, I note that Plaintiff also submitted a July 6, 2006 work release signed by his treating physician Dr. Gaswani, stating that he is "totally and permanently disabled." *Docket #17*. While generally, a treating physician's disability pronouncement is highly relevant to a disability determination, in the present case, Gaswani's statement postdates the ALJ's decision by over six months and therefore cannot be considered as part of his present application. If Plaintiff wishes to establish that he experienced a deterioration of his condition or the onset of another illness subsequent to the ALJ's December 2005 decision, the appropriate remedy is to initiate a new claim for benefits alleging an onset date consistent with the deterioration. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988).

This Court notes in closing that its conclusion recommending the dismissal is not intended to trivialize Plaintiff's legitimate impairments as a result of rheumatoid arthritis. However, based on a review of this record as a whole, it is evident that the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's motion to remand be

DENIED and the case DISMISSED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: June 4, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 4, 2007.

<pre>
                                        S/G. Wilson                        
                                        Judicial Assistant
</pre>